PROVIDED TO MAYO C.I. ON
8/10/11
DATE          INITIALS

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CIVIL RIGHTS COMPLAINT FORM
TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

RONDY ALEXIS PHILO,
Inmate # 198543
    Plaintiff,

vs.                                    CASE NO.:  4:11cv394-SPM/GRJ
                                       (To be assigned by Clerk)

ROBERT REAMS, SGT.,
JAMES KOCH, SGT.,
MARCUS DICKEY, C.O.,
KEITH PRIDGEON, SGT.,
    Defendants.
_____/

### ANSWER ALL OF THE FOLLOWING QUESTIONS:

I. **PLAINTIFF**

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:  Rondy Alexis Philo
Inmate Number:  198543
Prison or Jail:  Mayo Correctional Institution
Mailing Address:  8784 West U.S. Hwy. 27
    Mayo, FL  32066

II. **DEFENDANT(S):**

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **every** Defendant.

(1)  Defendant's name:  Robert Reams
    Official position:  Sergeant
    Employed at:  Taylor Correctional Institution
    Mailing address:  8515 Hampton Springs Road
    Perry, FL  32348

(2)  Defendant's name:  James Koch
    Official position:  Sergeant
    Employed at:  Taylor Correctional Institution
    Mailing address:  8515 Hampton Springs Road
    Perry, FL  32348

1

(3)   Defendant's name:     Keith Pridgeon
      Official position:    Sergeant
      Employed at:          Taylor Correctional Institution
      Mailing address:      8515 Hampton Springs Road
                            Perry, FL  32348

(4)   Defendant's name:     Marcus Dickey
      Official position:    Correctional Officer
      Employed at:          Taylor Correctional Institution
      Mailing address:      8515 Hampton Springs Road
                            Perry, FL  32348

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center.  42 U.S.C. § 1997e(a).  Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV.  PREVIOUS LAWSUITS

NOTE:  FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

   A.  Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
       Yes ( )                                   No (✓)
       1.  Parties to previous action:
           (a)  Plaintiff(s):_____
           (b)  Defendant(s): _____
       2.  Name of Judge: _____ Case #: _____
       3.  County and Judicial circuit: _____
       4.  Approximate filing date: _____
       5.  If not still pending, date of dismissal: _____
       6.  Reason for dismissal: _____
       7.  Facts and claims of case: _____

       **(Attach additional pages as necessary to list state court cases.)**

   B.  Have you initiated other actions in **Federal court** dealing with the same or similar facts/issues involved in this action?
       Yes ( )                                   No (✓)
       1.  Parties to previous action:
           (a)  Plaintiff(s):_____
           (b)  Defendant(s): _____
       2.  District and Judicial division: _____
       3.  Name of Judge: _____ Case #: _____
       4.  Approximate filing date: _____

2

        5. If not still pending, date of dismissal: _____
        6. Reason for dismissal: _____
        7. Facts and claims of case: _____

    **(Attach additional pages as necessary to list state court cases.)**

C.  Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitioners) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive for or some other wrong)?
    Yes ( )              No (✓)

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.
        1. Parties to previous action:
            (a) Plaintiff(s): _____
            (b) Defendant(s): _____
        2. District and Judicial division: _____
        3. Name of Judge: _____ Case #: _____
        4. Approximate filing date: _____
        5. If not still pending, date of dismissal: _____
        6. Reason for dismissal: _____
        7. Facts and claims of case: _____

    **(Attach additional pages as necessary to list state court cases.)**

D.  Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:
    Yes ( )              No (✓)
        1. Parties to previous action:
            (a) Plaintiff(s): _____
            (b) Defendant(s): _____
        2. District and Judicial division: _____
        3. Name of Judge: _____ Case #: _____
        4. Approximate filing date: _____
        5. If not still pending, date of dismissal: _____
        6. Reason for dismissal: _____

    **(Attach additional pages as necessary to list state court cases.)**

3

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issues, they must be addressed in a separate civil rights complaint.)**

1. Rondy A. Philo ("Plaintiff"), is a prisoner with the Florida Department of Corrections ("FDOC") and is housed at Mayo Correctional Institution ("MCI"), 8784 West U.S. Hwy. 27, Mayo, Florida 32066.

2. At all times material herein, Plaintiff was housed at Taylor Correctional Institution ("TCI"), 8515 Hampton Springs Road, Perry, Florida 32348.

3. At all times mentioned in this complaint, Defendants were FDOC Employees at Taylor Correctional Institution acting under color of State law.

4. Plaintiff sues all Defendant in their official and individual capacities.

5. Initially, on March 26, 2010, Defendant Sergeant R. Reams ("Reams") and Correctional Officer ("C.O.") C.M. Stryker proceeded to conduct head-count in F-Dormitory, Quad 2 at TCI.

6. As the count procedure were completed C.O. Stryker notified Defendant Reams that someone in cell F-2112 had committed an infraction.

7. Plaintiff and inmate Mario White were assigned to cell F-2112.

8. Defendant Reams then approached cell F-2112 and stated, "Someone had their private out while count was being conducted."

9. Plaintiff and cell-mate Mario White immediately notified Defendant Reams "His allegations were definitely false or there must be a mistake."

10. On March 30, 2010, during the feeding of the morning meal, Plaintiff attempted to rectify this matter with Defendant Reams, due to the seriousness of his allegations.

11. Plaintiff was then advised by Defendant Reams that "Neither he nor C.O. Stryker was pleased or satisfied with the alleged infraction on March 26, 2010, and problems will be forth coming."

12. Thus, leading Plaintiff to believe that the act of reprisal or retaliation are to come.

13. Plaintiff immediately sought administrative remedy by filing an informal grievance of reprisal on April 3, 2010, with the Security of Prison Operation, Supervisor Colonel Sistrunck.

14. Plaintiff's grievance of reprisal was denied by Captain Valentine at the institutional level, but was then forwarded to the Office of the Inspector General, Tallahassee, Florida, for further review on April 7, 2010.

15. Subsequently, twelve (12) days after the alleged infraction, on April 7, 2010, at or about 3:00 – 6:00 a.m., Plaintiff was awakened by Defendant Reams and Defendant Sergeant J. Koch ("Koch").

16. Plaintiff was then ordered to get dressed (Class "A" Uniform).

17. Plaintiff was then placed in leg-iron (feet shackled) and hands cuffed behind back by C.O. Stryker in the sally-port (hallway) of F-Dormitory.

18. Consequently, Defendants Reams and Koch took Plaintiff to the medical department.

19. Plaintiff was then notified that he would be placed in confinement for lewd and lascivious exhibition.

20. After Nurse L. Franklin completed the pre-confinement health assessment at (Time: 032). This procedure is where inmates are checked for impairments, infirmities, vital signs and allergies.

21. Medical records will show Nurse L. Franklin's pre-confinement housing health assessment chart that Plaintiff had no injuries, infirmities, impairments, or abnormal blood pressure prior to leaving the medical department on April 7, 2010, at 032 (a.m.)

22. Whereas upon April 7, 2010, at 0945 (a.m.), medical records clearly shows that Plaintiff have swelling to the left upper ribs area, small purple area noted. Tender palpitation, lungs clear to auscultation, small red area to left lower neck.

23. Plaintiff was then escorted by Defendants Reams and Koch from the medical department to G-Dormitory where all confinement inmates are housed.

24. Upon entering the confinement section, waiting in the sally-port where Defendants Sergeant K. Pridgeon ("Pridgeon") and C.O. M. Dickey ("Dickey") who were assigned as supervisor and dorm officer of the confinement unit.

25. Plaintiff was then asked by Defendant Pridgeon "What was your conviction for imprisonment?"

26. Plaintiff gave no response to Defendant Pridgeon's question.

27. Plaintiff was then taken by Defendants Reams, Koch, Pridgeon, and Dickey to a small room in the hallway of G-Dormitory, where the confinement cameras are unable to view.

28. Defendant Dickey followed along, but stood at the door entrance of this small room.

29. In this small room sat a computer on a desk top, to the right is cage filled with T.V. monitors and a cabinet not too far off.

30. Plaintiff was later told by the Internal Inspector Mr. Land, that this small room is the disciplinary hearing room.

31. (Noted) While being incarcerated at TCI, Plaintiff never received a Disciplinary Report ("DR") charge which would be Plaintiff's only means for being in the disciplinary hearing room.

32. While in this room, Plaintiff was ordered by Defendant Reams to face the wall in between the cabinet and the cage filled with T.V. monitors.

33. Upon facing the wall, Plaintiff was brutally attacked and maliciously beaten to the floor while restrained (Plaintiff's hands were cuffed behind his back and legs were shackled together) by Defendants Reams, Koch, and Pridgeon.

34. Whereas, Defendant Dickey stood at the door entrance and watched the beating of Plaintiff occur.

35. Furthermore, Defendants Reams, Koch, Pridgeon, and Dickey knew the adverse effect their action could cause Plaintiff serious injuries when they brutally ad physically assaulted Plaintiff.

36. Likewise, Defendants Reams, Koch, Pridgeon and Dickey knew of the problems associated with FDOC staff abuse and the use of excessive force yet disregarded the risk.

37. Even so, Defendants Reams, Koch, Pridgeon and Dickey knew or reasonably should have known that the rights of Plaintiff to be free from cruel and unusual punishment is guaranteed in the U.S. Constitution.

38. During this brutal attack and beating, Plaintiff was first punched in the neck area by Defendant Reams.

39. Then punched in the mid-section (stomach) by Defendant Koch.

40. As Plaintiff leaned forward, Plaintiff was punched again in the mid-section by Defendant Reams.

41. Plaintiff then fell to the floor.

42. Once on the floor, Plaintiff was kicked by Defendant Pridgeon in the left rib cage area.

43. In the like manner, Defendants Reams and Koch joined Defendant Pridgeon in kicking and stomping Plaintiff repeatedly in the torso area of the body.

44. Plaintiff was restrained with leg-iron and hand cuffed behind back while the kicking and stomping took place. (In an effort to protect himself, Plaintiff tried to position himself in the fetus position).

45. During this malicious attack, Plaintiff became very dizzy and winded (out of breath).

46. Thereafter, when Defendants Reams, Koch, and Pridgeon stopped kicking Plaintiff, Plaintiff was then ordered by Defendant Reams to stand up.

47. Plaintiff's first attempt to stand up was unsuccessful.

48. Plaintiff was then assisted in the standing position by Defendants Reams and Koch.

49. After Plaintiff began to stagger and stumble, Defendant Pridgeon then ordered Defendant Dickey to remove the leg-irons from Plaintiff's feet and hold Plaintiff steady until Plaintiff could catch his breath.

50. Defendant Reams then stated to Plaintiff "Be a man, keep your mouth shut, do your time in confinement and when you are released form confinement, take care of your business with Inmate Jesse Clark. Then I (Reams) will know that I (Reams) picked the wrong cell."

51. Plaintiff was then escorted by Defendant Dickey to a single man shower stall, where Plaintiff was stripped searched.

52. Thereafter, Plaintiff was placed in a cell (by himself) on the second floor of this confinement unit.

53. While in this cell, Plaintiff began having difficulty breathing.

54. Plaintiff could not seek medical attention during that current shift. Due to the fact, upon information and belief Defendants Reams, Koch, Pridgeon and Dickey generally adhere to a "Code of Silence" and lie to conceal assaults and batteries on prisoners.

55. However, Plaintiff waited until the shift-change (the changing of guards on duty) at approximately 8:00 – 8:15 a.m.

56. At this time, Plaintiff noticed his assigned Classification Officer Mr. R. Wynn ("Wynn") conducting his confinement rounds (walk through).

57. It was then that Plaintiff explained to Mr. Wynn the brutal attack and physical beatings which was carried out against Plaintiff by Defendants Reams, Koch, Pridgeon, and Dickey.

58. After Mr. Wynn observed the bruises and marks Plaintiff sustained, he (Wynn) advised Plaintiff to sit-down. He (Wynn) is going to get a nurse and report this incident to the internal inspector.

59. Some 30-45 minutes later, Plaintiff was escorted by Sergeant Tedder and C.O. Early to the nurse's station in the hallway of G-Dormitory.

60. (Just as recited on Line 22) Whereas upon April 7, 2010, at 0945 (a.m.), medical records clearly shows that Plaintiff have swelling to the left upper rib area, small purple area noted, tender palpitation, lungs clear to auscultation, small red area to left lower neck.

7

61. Nurse A. O'Quinn ("O'Quinn") could not identify if Plaintiff had sustained any impairment to the left rib area, only the fact of swelling and redness.

62. Nurse O'Quinn then decided to contact the institutional doctor.

63. The institutional doctor never came to see Plaintiff thereafter.

64. Plaintiff was less then adequately examined by a doctor.

65. While waiting for the institutional doctor to arrive, Sgt. Tedder and C.O. Early began taking photographs of Plaintiff's bruises, marks and injuries sustained from being attack and physically assaulted by the Defendant.

66. During the process of photographing Plaintiff, Sgt. Tedder stated, "Someone really put the boot to you and the bruises on your left rib area look like marks form the bottom of a boot."

67. The deliberate indifference and reckless disregard of Defendants Reams, Koch, Pridgeon, and Dickey has caused Plaintiff to suffer: a) Fracture of the seventh rib bone (left-side); b) Bruises around the neck area; c) Head injury that now causes Plaintiff severe migraines; d) Emotional and mental stress.

68. Thereafter, Plaintiff was then placed in a different cell in another unit of confinement.

69. At about 5:00 – 6:00 p.m., Plaintiff's breathing became more difficult and the pain in Plaintiff's left rib area became unbearable.

70. At this time, Plaintiff's cell-mate Inmate Damion Thomas notified the confinement officer which the officer then notified the shift supervisor (Captain Murphy).

71. Plaintiff was then escorted to the medical department in a wheelchair.  (This was photographed on videotape).

72. After seeing Nurse LPN C. Cain ("Cain"), Plaintiff was given eight (8) packs of Ibuprofen for pain relief.

73. Medical records also show on April 7, 2010, at 1750, Sr. LPN Cain examined Plaintiff's injuries which showed left rib pain, bruises on left rib and slightly swollen.

74. Plaintiff was placed in a wheelchair and escorted to another section of the prison compound called the Annex.

75. Plaintiff was then placed in administrative confinement ("AC").

76. The following morning of April 8, 2010, at 8:30 – 9:30 a.m., Plaintiff was taken to see the Internal Inspectors Mr. Land and Mr. McCray.

77. During this visit, Plaintiff was asked by Mr. Land to "Raise your left hand."

78. But Plaintiff could not raise his left hand due to the severity of the pain within the left rib area.

8

79. Plaintiff was then taken to get an x-ray performed on his left rib cage.

80. After the interview and x-ray were completed, Plaintiff was escorted back to AC.

81. On April 21, 2010, Plaintiff was taken to see ARNP K. Lightfoot ("Lightfoot").

82. Ultimately, Plaintiff was then told by Ms. Lightfoot that the x-ray results shows fractures on the left rib cage (seventh rib) and an elevated blood pressure.

83. Ms. Lightfoot then stated, "No surgery would be necessary and the fractured rib would be able to heal on its own."

84. Plaintiff was then prescribed three (3) a day Motrin for the pain and discomfort associated with the fractured rib.

85. As a direct result of Defendants Reams, Koch, Pridgeon, and Dickey's failure to perform their duties within the rules set forth in FDOC, Plaintiff was injured physically, mentally or emotionally.

86. Even so, Defendants Reams, Koch, Pridgeon, and Dickey clearly disregarded the obligation to provide care, custody and control in FDOC and under conditions which do **not** present danger to health and well being of Plaintiff.

87. Moreover, as a proximate result of the deliberate indifference and reckless disregard of Defendants Reams, Koch, Pridgeon, and Dickey, Plaintiff is currently suffering from: a) Severe headaches that comes and goes periodically; b) Symptoms of severe headaches that are associated with migraine headaches; c) Severe headaches, often accompanied by nausea and disturbed vision; d) Sharp pains in the left rib area during daily activities; e) Sleepless nights caused by emotional or mental stress (the remembrance of the physical assault).

88. Even so, Plaintiff are getting these migraine headaches on a regular basis, especially when the noise level are high and when the lights are too bright.

89. Still, Plaintiff utilized the sick-call procedure on July 27, 2010 and August 8, 2010, for severe headaches consistent with migraines.

90. However, an appointment was scheduled to see ARNP K. Lightfoot.

91. On August 11, 2010, Ms. Lightfoot placed Plaintiff on Ibuprofen 600 mg. to relieve the pains associated with migraine headaches.

92. Thus, Plaintiff has been taking a high dosage of Ibuprofen to relieve the pain associated with migraine headaches.

93. More so, Plaintiff have never been diagnosed with migraine headaches or abnormal blood pressure prior to, nor during Plaintiff's incarceration.

94. These migraine symptoms started showing and became extremely painful on August 8, 2010, for which Plaintiff sought medical care. These migraine problems were not present on

April 7, 2010, before Defendants Reams, Koch, Pridgeon, and Dickey physically and brutally kicked and punched Plaintiff.

95. Before Defendants Reams, Koch, Pridgeon, and Dickey physically kicked and punched Plaintiff, Plaintiff did not suffer from: a) Emotion or mental stress; b) Migraine headaches, disturbed vision or nausea; c) The fracture of rib cage.

96. Because of the deliberate indifference and reckless disregard of Defendants Reams, Koch, Pridgeon, and Dickey, Plaintiff has suffered the short-term effects as well as long-term effects that commonly becomes problematic with being physically and maliciously beaten and unnecessary affliction of excessive use of force.

97. As a proximate cause of Defendants Reams, Koch, Pridgeon, and Dickey's deliberate indifference, plaintiff has been exposed to emotional or mental stress and the physical problems associated with this brutal assault and battery which took place on April 7, 2010.

98. Medical records will clearly show the injuries Plaintiff sustained by the reckless disregard of Defendants Reams, Koch, Pridgeon, and Dickey.

99. Now, even though Defendant Dickey did not strike, kick or punch Plaintiff, Defendant Dickey participated in this brutal assault and battery on Plaintiff by watching the door entrance of G-Dormitory confinement unit.

100. Defendant Dickey participation was to aware Defendants Reams, Koch, and Pridgeon if someone (employee) was coming.

101. Defendant Dickey knew and had knowledge of the substantial risk of serious harm that was being carried out against Plaintiff.

102. Because of the deliberate indifference and reckless disregard of Defendant Dickey, Plaintiff suffered a fracture of the seventh rib, bruises to the left lower neck areas, severe headaches and emotional or mental stress.

103. Defendant Dickey failed to provide proper security and guarantee safety of Plaintiff.

104. Because of Defendant Dickey deliberate indifference and reckless disregard to Plaintiff's safety, Plaintiff experienced sever pain and suffering without any penological justification.

105. Ultimately, Plaintiff was beaten and attacked solely as a retaliation for the alleged infraction stated by C.O. Stryker on March 26, 2010.

106. C.O. Stryker also brought a false disciplinary report against Plaintiff under prison disciplinary procedure on April 7, 2010, for lewd and lascivious exhibition.

107. During Plaintiff's 18 years of incarceration, Plaintiff has never acted in such a manner stated by C.O. Stryker, Plaintiff's prison record will verify this.

108. Still, Plaintiff was found guilty of said charge based upon C.O. Stryker statement and was ordered to sixty (60) days disciplinary confinement ("DC") and revocation of visitation privileges for two (2) years as a management tool.

109. In addition, a reprimand was entered in Plaintiff's prison records.

110. On May 25, 2010, Plaintiff contacted the Office of the State Attorney in Perry, Florida, seeking any form of assistance.

111. Upon information and belief, incidents in this regard commonly go unnoticed or quote, unquote "swept under the rug" at TCI due to improper investigation procedures or the lack thereof.

112. Plaintiff also contacted the Office of the Inspector General in Tallahassee, Florida on May 26, 2010 and July 19, 2010.

113. But never received any reply from the Office of the Inspector General.

114. Plaintiff was interviewed a second time by the Internal Inspectors Mr. Land and Mr. McCray on June 18, 2010.

115. During this interview, Plaintiff realized many of the questions being asks were directed toward protecting the four (4) Defendants.

116. All interviews conducted by the internal inspector are recorded on audio tape.

117. The monitoring of Plaintiff's phone records (audio) from March 26, 2010 through April 7, 2010 will show Plaintiff telling his wife (Mrs. Yashari Philo) the escalating of each event leading up to the malicious beating of Plaintiff.

118. Plaintiff spent a combined total 145 days in both AC and DC confinement.

119. As a result, Plaintiff was then transferred to Lake Butler Reception Center on August 30, 2010, for security purposes and protection from all Defendants Reams, Koch, Pridgeon, and Dickey.

120. Thereafter, Plaintiff was again transferred to MCI on September 8, 2010.

121. Thus, Plaintiff has stated a claim against Defendants Reams, Koch, Pridgeon, and Dickey.

122. These four Defendants knew their deliberate indifference and reckless disregard could cause Plaintiff substantial risk of serious harm, yet failed to take reasonable measures to guarantee safety of Plaintiff.

123. The four Defendants knew or reasonably should have known that Plaintiff has the right to be free from cruel and unusual punishment and the infliction of unnecessary and wanton pain.

124. Their failure caused Plaintiff serious injuries that are associated with short-term effects as well as long-term effects that commonly become problematic with violently being physically attack and beaten while restrained.

125. A jury could infer deliberate indifference and reckless disregard from the fact that Defendants Reams, Koch, Pridgeon, and Dickey knew the extent of inflicting unnecessary and wanton pain against Plaintiff could cause a serous risk of harm, yet declined to do anything preventable to guarantee safety of Plaintiff.

126. Plaintiff has exhausted his administrative remedies and files this suit.

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint**.

Plaintiff supports the following claims by references in the Statement of Facts:

### CLAIM ONE
(Against Defendant Reams)

127. Defendant Reams, while acting under Color of State Law, violated Plaintiff's Eighth Amendment Rights by engaging in maliciously and sadistically kicking and punching Plaintiff for the sole purpose of causing serious bodily harm.

128. Deprivation involving "serious" injury inflicted by Defendant Reams, acting with a culpable state of mind violated Plaintiff's Eighth Amendment Rights.

129. Defendant Reams knew or reasonable should have known that Plaintiff has a constitutional right to be free from cruel and unusual punishment and "the unnecessary and wanton infliction of pain."

130. Defendant Reams also knew the use of excessive violent force violates Plaintiff's Eighth Amendment Rights when it is **not** applied "in a good faith effort to maintain or restore discipline" but instead is used to "maliciously and sadistically cause harm."

131. Defendant Reams knew or reasonably should have known the use of excessive physical force would result in causing serious harm, long and short term effects, as well as, permanent disability upon Plaintiff.

132. Defendant Reams' attack upon Plaintiff resulted in the infliction of unnecessary and wanton pain.

133. Defendant Reams' duties were to perform or provide humane conditions of confinement, ensuring that Plaintiff received adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of Plaintiff.

134. Defendant Reams' failure in his duties under conditions cause substantial risk of serious harm to Plaintiff and displayed "deliberate indifference" to Plaintiff's health and safety.

135. Defendant Reams acted with evil motive and malicious intent as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights.

### CLAIM TWO
(Against Defendant Koch)

136. Defendant Koch, while acting under Color of State Law, violated Plaintiff's Eighth Amendment Rights by engaging in maliciously and sadistically kicking and punching Plaintiff for the sole purpose of causing serious bodily harm.

137. Deprivation involving "serious" injury inflicted by Defendant Koch, acting with a culpable state of mind violated Plaintiff's Eighth Amendment Rights.

138. Defendant Koch knew or reasonable should have known that Plaintiff has a constitutional right to be free from cruel and unusual punishment and "the unnecessary and wanton infliction of pain."

139. Defendant Koch also knew the use of excessive violent force violates Plaintiff's Eighth Amendment Rights when it is **not** applied "in a good faith effort to maintain or restore discipline" but instead is used to "maliciously and sadistically cause harm."

140. Defendant Koch knew or reasonably should have known the use of excessive physical force would result in causing serious harm, long and short term effects, as well as, permanent disability upon Plaintiff.

141. Defendant Koch's attack upon Plaintiff resulted in the infliction of unnecessary and wanton pain.

142. Defendant Koch's duties were to perform or provide humane conditions of confinement, ensuring that Plaintiff received adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of Plaintiff.

143. Defendant Koch's failure in his duties under conditions cause substantial risk of serious harm to Plaintiff and displayed "deliberate indifference" to Plaintiff's health and safety.

144. Defendant Koch acted with evil motive and malicious intent as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights.

## CLAIM THREE
### (Against Defendant Pridgeon)

145. Defendant Pridgeon, while acting under Color of State Law, violated Plaintiff's Eighth Amendment Rights by engaging in maliciously and sadistically kicking Plaintiff for the sole purpose of causing serious bodily harm.

146. Deprivation involving "serious" injury inflicted by Defendant Pridgeon, acting with a culpable state of mind violated Plaintiff's Eighth Amendment Rights.

147. Defendant Pridgeon knew or reasonable should have known that Plaintiff has a constitutional right to be free from cruel and unusual punishment and "the unnecessary and wanton infliction of pain."

148. Defendant Pridgeon also knew the use of excessive violent force violates Plaintiff's Eighth Amendment Rights when it is **not** applied "in a good faith effort to maintain or restore discipline" but instead is used to "maliciously and sadistically cause harm."

149. Defendant Pridgeon knew or reasonably should have known the use of excessive physical force would result in causing serious harm, long and short term effects, as well as, permanent disability upon Plaintiff.

150. Defendant Pridgeon's attack upon Plaintiff resulted in the infliction of unnecessary and wanton pain.

151. Defendant Pridgeon's duties were to perform or provide humane conditions of confinement, ensuring that Plaintiff received adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of Plaintiff.

152. Defendant Pridgeon's failure in his duties under conditions cause substantial risk of serious harm to Plaintiff and displayed "deliberate indifference" to Plaintiff's health and safety.

153. Defendant Pridgeon acted with evil motive and malicious intent as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights.

## CLAIM FOUR
### (Against Defendant Dickey)

154. Defendant Dickey while acting under Color of State Law violated Plaintiff's Eighth Amendment Rights by failing to prevent harm under conditions posing substantial risk of serious harm to Plaintiff and displayed "deliberate indifference" to Plaintiff's health and safety.

155. Defendant Dickey knew or had reasonable knowledge that Defendants Reams, Koch, and Pridgeon malicious intent and evil motive was to cause serous bodily harm upon Plaintiff, yet failed to prevent such physical assault and battery.

156. Instead, Defendant Dickey participated by watching the door entrance of G-Dormitory confinement unit to warn Defendants Reams, Koch, and Pridgeon if someone was coming, while having knowledge that harm would result against Plaintiff.

157. Defendant Dickey failed in his duties to require the ordinary care, interest and safety of Plaintiff.

158. Even though Defendant Dickey did not strike, punched or kicked Plaintiff, Defendant Dickey failed in his duties to take reasonable measures to guarantee safety of Plaintiff by having knowledge of serious harm being carried out against Plaintiff.

159. Defendant Dickey knew his actions would cause substantial risk of serious harm to Plaintiff, yet displayed "deliberate indifference" to Plaintiff's health and safety.

160. Defendant Dickey's duties were to perform or provide humane conditions of confinement, ensuring that Plaintiff received adequate food, clothing, shelter and medical care and must take reasonable measures to guarantee safety of Plaintiff.

161. Defendant Dickey acted with evil motive and malicious intent as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights.

162. There is no doubt that all of the above Defendants clearly disregarded their obligation to provide care, custody and control by inflicting bodily harm which does present a danger to Plaintiff's health and well being.

163. However, Defendants knew the adverse effects their actions could cause upon Plaintiff, yet failed to respond reasonably.

164. As we have seen, all Defendants failed to take the proper and any corrective remedy to the known risk their actions would cause on Plaintiff's physical and mental health.

165. The above Defendant's deliberate indifference and reckless disregard for Plaintiff's constitutional rights has caused the adverse effects mentioned in the statement of facts to Plaintiff's health and all medical problems resulting from the physical assault and battery carried out by all Defendants.

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/statutes.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

1. A declaration that the acts and omission described herein violated Plaintiff's rights under the Constitution and laws of the United States.

2. <u>Nominal damages</u>: against each Defendant.

3. <u>Compensatory damages</u>: Plaintiff request compensatory damages against each Defendant, for malicious physical assault and battery upon Plaintiff and causing Plaintiff serious bodily injuries. Also for, the failure to provide reasonable measures to guarantee safety of Plaintiff, in an amount sufficient to compensate Plaintiff for the pain and suffering endured by Plaintiff due, to the deliberate indifference and intentional misconduct of Defendant's but in no event less than $850,000 and such additional relief as the court may deem just and proper.

4. <u>Punitive damages:</u> Plaintiff request punitive damages solely to punish the Defendants for actions and to deter similar behavior from Defendants and others in the future. Plaintiff does claim "mental and emotional injury" and does seek punitive damages for any "mental or emotional injury." Plaintiff seeks punitive damages against each Defendant for each claim they were involved in, in an amount to be determined by a jury at trial, or as the court may deem just and proper.

5. <u>Injunction</u>: Plaintiff requests that an injunction be entered, mandated that Defendants pay the cost for an evaluation by a psychologists specialist that is not a FDOC employee, that Defendants pay for cost of further therapy and treatment, and any other medical treatment required for Plaintiff's injuries resulting from these claims.

6. <u>Injunctive Relief</u>: Plaintiff requests that an injunction be entered, impounding camera witness dated April 7, 2010, time at approximately 3:00 – 6:00 a.m., of the TCI confinement unit. The impounding of all photographs taken of Plaintiff's injuries and the impounding of all telephone audio Plaintiff placed on March 26, 2010 through April 7, 2010 and all relevant witnesses interviews and statements be impounding.

7. <u>Preliminary Injunction</u>: Plaintiff requests that a preliminary injunction be entered, mandated that a restraining order against all the defendants in this action be put in place, who knowingly, intentionally, purposely and maliciously caused serious bodily harm and injuries in their efforts to deprive Plaintiff of his Constitutional Rights.

8. <u>Cost</u>: Plaintiff requests reimbursement of all costs in fees incurred in bringing this action including but not limited to attorney fees, paralegal and private investigation fees, legal research and legal writing, copying costs, postage, envelopes, expert witnesses, filing fees and court costs and any other fees related to these claims.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

AUGUST 10th, 2011
(Date)

Rondy Philo
(Signature Of Plaintiff)

**IF MAILED BY PRISONER:**

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☒ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 10th day of AUGUST 2011.

Rondy Philo
(Signature Of Plaintiff)

17

Rondy Philo #198543 B1221 "C"
Mayo Correctional Institution
8784 West U.S. Hwy 27
Mayo, Fla 32066

"LEGAL MAIL"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
OFFICE OF THE CLERK
111 NORTH ADAMS STREET, SUITE 322
TALLAHASSEE, FLORIDA 32301-7730

MAILED FROM A
STATE CORRECTIONAL
INSTITUTION