IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RONDY ALEXIS PHILO,

     Plaintiff,

v.                                         CASE NO. 4:11-cv-394-SPM-GRJ

ROBERT REAMS, et al,

     Defendants.

_____/


## REPORT AND RECOMMENDATION

     Plaintiff, an inmate in the custody of the Florida Department of Corrections,

initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983.  (Doc.

1.)  The case is presently before the Court on Defendants' Motion for Summary

Judgment.  (Doc. 90.)  Plaintiff has filed a response in opposition to the motion (Doc.

106) and, with the Court's permission (Doc. 109), Plaintiff also has filed a supplement to

his response.  (Doc. 108.)  This matter is, therefore, ripe for review.  For the reasons

that follow, the undersigned recommends that Defendants' motion for summary

judgment be denied.

## I.  BACKGROUND

     The allegations of the complaint arise from a series of events that began on

March 26, 2010 at Taylor Correctional Institution, where Plaintiff was then incarcerated.

Taking the evidence in the light most favorable to Plaintiff, as the Court is required to

do, the material facts are as follows.

During headcount that day, Officer Stryker – a female correctional officer at Taylor CI – informed Officer Reams, a fellow correctional officer, that either Plaintiff or his cellmate was masturbating during count proceedings. Plaintiff denied the allegations and informed Defendant Reams that a mistake had been made.  Three days later, on March 30, Plaintiff talked to Sergeant Reams to try to convince him that Plaintiff had not committed the infraction.  Unsuccessful in this conversation, Plaintiff filed an informal grievance on April 3 with Mr. Sistrunck, of the Security of Prison Operation. On April 7, the grievance was denied, and forwarded to the Office of the Inspector General in Tallahassee for review.

In the early morning on April 7, around 3:00 a.m., Sergeant Reams and Sergeant Koch went to Plaintiff's cell to place him in confinement due to the lewd exhibition infraction.  They woke Plaintiff, instructed him to get dressed, handcuffed him and placed leg-shackles on him.  Plaintiff was taken to the medical department for a pre–confinement health assessment.  After the assessment was complete, Plaintiff alleges that he was taken to a disciplinary hearing room in the sally-port area of G dorm where he was attacked and beaten by Sergeants Reams, Koch, and Pridgeon, while Officer Dickey looked on and acted as a lookout.  Plaintiff alleges that he was punched in the neck and stomach by Sergeant Reams, punched in the stomach by Sergeant Koch, kicked in the ribs by Sergeant Pridgeon, and kicked and stomped repeatedly in the torso area by those three Defendants.  Plaintiff alleges he was dizzy and could not stand.  As his leg irons were being removed, Plaintiff claims that Sergeant Reams said, "be a man, keep your mouth shut, do your time in confinement and when you are

released [from] confinement, take care of your business with Inmate Jesse Clark.  Then I will know that I picked the wrong cell."

Plaintiff asserts that he was then taken to a shower cell where he was strip searched, and was finally taken to a confinement cell, alone.  Plaintiff had difficulty breathing, but did not seek help until approximately 8:00 am-8:15 am after the shift change. Plaintiff told classification officer Wynn about the attack.  Officer Wynn observed bruises and reported the incident.

Plaintiff was then taken to medical for an examination.  The medical records from 9:45 a.m. that morning disclose that Plaintiff had swelling to the left upper rib area, a small purple area, tender palpitation, lungs clear to auscultation, and a small red area on the left lower neck.  Plaintiff asserts that the institutional doctor was contacted but never came.  Plaintiff claims that Sergeant Tedder, who was photographing Plaintiff's injuries, stated that "someone really put the boot to you and the bruises on your left rib area look like marks [from] the bottom of a boot."  Plaintiff returned to confinement but later, around 5:00 p.m., he had trouble breathing and was taken back to medical in a wheelchair.  Plaintiff was examined and the nurse noted he had bruises that were slightly swollen.  Thereafter, Plaintiff was taken to administrative confinement.

On April 7, 2010, Officer Stryker filed a disciplinary report against Plaintiff for lewd and lascivious exhibition. Plaintiff alleges this was a false report.  Plaintiff was found guilty, ordered to serve sixty days of disciplinary confinement, and his visitation privileges were revoked for two years.

On April 8, 2010, Plaintiff met with inspectors Land and McCray in a recorded

session.  Plaintiff could not raise his left hand and was taken back to medical for an x-ray and interview.  The results of the x-ray showed that there were fractures on the left rib cage, specifically the seventh rib, and Plaintiff had elevated blood pressure.  Plaintiff was told the injury to his rib would heal on its own, and was given Motrin for pain and discomfort.  In August 2010, Plaintiff was placed on an ibuprofen regiment for treatment of recurring migraines.  Plaintiff was then transferred to Lake Butler.

Plaintiff contends he had never been diagnosed with migraine headaches or abnormal blood pressure prior to the events on April 7, 2010. He contends that due to the beating he now suffers from recurring migraine headaches, sharp pains in the left rib area and sleeplessness due to emotional and mental stress. He contends that he did not suffer from a fractured rib injury prior to April 7, 2010.

Plaintiff seeks an award of compensatory damages against Sergeants Reams, Koch, and Pridgeon for violating his Eighth Amendment rights to be free from cruel and unusual punishment, and against Officer Dickey who allegedly witnessed the events and failed to protect him from abuse or report the abuse.  Plaintiff also requests nominal and punitive damages.

## II. SUMMARY JUDGMENT MOTION AND EVIDENCE

In support of their motion for summary judgment, Defendants have submitted Plaintiff's disciplinary report for lewd and lascivious exhibition; Plaintiff's relevant medical records; the fixed wing video of G Dorm confinement unit; a copy of the Inspector General case; Plaintiff's disciplinary report for a telephone infraction; a map of G Dorm and photographs of the disciplinary hearing room; the declarations of Officer

Sadler, Sgt. Reams, Officer Dickey, Sgt. Pridgeon, and Sgt. Koch; excerpts from

Plaintiff's deposition; two housing unit logs from F and G dorms; Plaintiff's daily record

of special housing; Inspector Land's recorded interview with Plaintiff; and photographs

of Plaintiff's injuries.  (Doc. 90, Exs. A-Q.)  Defendants argue that there is no dispute as

to any material fact and that they are entitled to summary judgment on all claims.  (Doc.

90.)

Evidence submitted by Plaintiff consists of his declaration; copies of grievances;

copies of his letters to the State Attorney in Perry, Florida; the declaration of Plaintiff's

wife Yashari Philo; copies of Plaintiff's demand for discovery and requests to produce;

excerpts of Plaintiff's medical records; and the interrogatory answers from Sgt. Reams,

Sgt. Koch, Sgt. Pridgeon, and Officer Dickey.  (Doc. 106, Exs. A-Z.)  Plaintiff also

included copies of various exhibits submitted by Defendants, such as copies of the

declarations of Officer Sadler, Sgt. Reams, Sgt. Koch, Sgt. Pridgeon, and Officer

Dickey, copies of photographs of his injuries, the daily record of special housing, and

the housing unit log.  (Doc. 106.)  Plaintiff also filed a supplement to his response in

opposition with additional exhibits– the declarations of inmates Mario White and Vernon

Porter.  (Doc. 108.)

### III.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary

judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of

law." In applying this standard, the Court must examine the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.)  As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v. Techsouth,* 833 F.2d 1525, 1528 (11th Cir. 1987.)  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks, 548 U.S. 521, 530 (2006)*.  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV. DISCUSSION

**A.      Eighth Amendment Claims Against Sergeants Reams, Koch and Pridgeon and Officer Dickey**

Plaintiff alleges claims against Sgts. Reams, Koch, and Pridgeon for violating his Eighth Amendment rights.  The Eighth Amendment states that no cruel and unusual punishments are to be inflicted.  U.S. Const. Amend. VIII.  In a prison setting, force is deemed legitimate under the Eighth Amendment as long as it is used "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986.)  A variety of factors are considered in determining whether the force was applied maliciously or sadistically, including the need for force, the relationship between that need and the amount of force used, the threat reasonably perceived by the prison officials applying it, and any efforts made to temper the severity of the force used.  A *de minimis* use of force, as evidenced by *no* injury, typically cannot support a claim of excessive use of force.  *Hudson v. McMillian,* 503 U.S. 1, 7-8 (1992).

Plaintiff also alleges a claim against Officer Dickey for failing to intervene and protect him from abuse in violation of his Eighth Amendment rights.  The Eleventh Circuit has stated that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."  *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) (*citing Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986)); *see also Clark v. Argutto*, 221 Fed. App'x. 819, 826 (11th Cir. 2007.)

Conceding that "Plaintiff's version of events, if true, provide Defendants with little chance of success when juxtaposed against a typical Eighth Amendment inmate abuse analysis," (Doc. 90 at 12), Defendants instead argue that Plaintiff's version of events is not believable.  In support Defendants point to the G Dorm housing log which shows that Defendants Reams and Koch arrived at G dorm at 3:30 a.m., and three minutes and six seconds later, at 3:33:06 a.m., the G dorm camera captured Plaintiff entering his assigned quad in G dorm looking "completely normal."  Thus, according to Defendants, because the Defendant was only out of camera range in the disciplinary hearing room for approximately three minutes there was insufficient time for the beating to have occurred the way that Plaintiff described it. In addition, Defendants point to the fact that the video confirms the Plaintiff was not injured because he is depicted on the video walking normally when he is escorted from the disciplinary hearing room. Defendants also argue that Plaintiff's fractured rib – which did not require any special treatment –  is a *de minimis* injury and, thus, insufficient to show a violation of the Eighth Amendment.

The Court has reviewed all of the summary judgment evidence submitted by the parties, including the DVD containing the wing video, and determines that there are genuine disputes as to material facts that preclude the entry of summary judgment. This case presents a classic example of an inmate contending that he was beaten by correctional officers and correctional officers who adamantly deny any such incident occurred. Notably, while the wing video does not show anything unusual prior to Plaintiff's entry into the disciplinary hearing room and nothing remarkable after the

Plaintiff is depicted leaving the disciplinary hearing room, the video does not depict what occurred in the three minutes the Plaintiff is not captured on camera. Plaintiff avers under oath that he was beaten. The Defendants deny under oath that they did not do so. The evidence is undisputed that Plaintiff was examined and his 7th rib was broken. Whether the broken rib is the result of the beating described by Plaintiff or some other event or cause is an issue that is best left for resolution by a jury and not by the Court on a motion for summary judgment.

There is no dispute that the medical evidence of record demonstrates that Plaintiff suffered a fractured rib. Other than suggesting that Defendants did not cause the fracture of Plaintiff's rib – because the video depicts Plaintiff walking normally after the incident allegedly happened – Defendants have not submitted any evidence contradicting Plaintiff's assertion that his rib was broken when Defendants attacked him.  Plaintiff's medical record evidences that Plaintiff was in good health, with no injuries, before he was placed in confinement.  (Doc. 90, Ex. B.)  In contrast, medical records from after Plaintiff was placed in confinement show that Plaintiff had "mild swelling" to his upper rib area, a small purple area was noted, he was tender palpitation, and a small red area was noted on the left lower neck.  *Id.*  After Plaintiff continued to complain of pain, an x-ray was ordered, which revealed a left seventh rib fracture. *Id.*  Further, the medical records demonstrate that Plaintiff sought medical assistance hours after the alleged attack, and repeatedly sought treatment in the months thereafter for the problems he alleges he suffered in connection with the alleged attack. *Id.*

With regard to evidence of record concerning the alleged beating, the evidence submitted by Defendants does not show there are no disputed issues of fact and does not demonstrate  that Plaintiff's version of events is not believable.

According to Defendants, Plaintiff's version of events is not believable because it conflicts with the G-dorm housing log and the fixed wing video. During Plaintiff's deposition he testified that he was beaten for approximately "thirty or forty seconds" and then he was given "four or five" minutes to recover and catch his breath before Defendants escorted him to his cell in confinement.  (Doc. 90, Ex. L, pp. 59, 69.)  Yet, the G-dorm housing log shows Plaintiff arrived in G dorm at 3:30 a.m. (Doc. 90, Ex. N) and the G dorm fixed wing video shows Plaintiff entering his assigned quad in G dorm looking "completely normal" at 3:33:06 a.m.  (Doc. 114, Ex C under seal.)  Based upon this evidence Defendants surmise that the beating Plaintiff describes as taking at least four minutes and thirty seconds, could not have happened within the approximate three minute period of time depicted on the video where the Plaintiff was in the disciplinary hearing room out of sight of the video. The video, of course, does not  show what happened during the approximately three minutes in question, when Plaintiff alleges he was beaten.

In addition to the fact that the video does not show what happened, Defendants' suggestion that the chronology of the video conflicts with Plaintiff's testimony is not entirely accurate. Plaintiff's testimony during his deposition about the length of time during which he was beaten and then allowed to collect himself before being taken to

his dorm was clearly an estimate. (Doc. 90, Ex. L, p. 63.)[1]  The point is that the difference in time between the three minutes, depicted on the video when the attack allegedly occurred, and the estimate that Plaintiff provided, is marginal, consisting of a difference, at most, of only about a minute and a half.

With regard to what the video does show, it does not demonstrate that Plaintiff was not injured. Rather, the video shows Plaintiff walking without any apparent distress. Whether this evidence is sufficient to demonstrate that Plaintiff was not injured is an issue best left for determination by a jury. The Court cannot determine that simply because the video depicts Plaintiff walking "normally" (whatever walking "normally" means) it means the Plaintiff was not beaten and he did not suffer a broken rib at that time.  Indeed, having a broken rib does not necessarily prevent someone from walking. The jury should be given an opportunity to view the video and determine for itself whether the manner in which Plaintiff is depicted walking after the incident allegedly occurred demonstrates that he was not injured. As such, viewing the evidence in the light most favorable to Plaintiff – as the Court is required to do on a motion for summary judgment –  the Court cannot conclude that Defendants have met their burden of showing that there is no genuine dispute as to any material fact.

Lastly, regarding Defendants' argument that Plaintiff's broken rib is a *de minimis*

---

[1] The Plaintiff was asked how long the beating lasted:

Q.    Right. I'm not asking for exact answers. I'm just asking for your estimate.

Plaintiff answered:

A.    My estimate, and I gave you the estimate, maybe 30, 45 seconds.

injury, because it required no medical treatment other than ibuprofen, the Court disagrees that a broken rib constitutes a *de minimus* injury. An injury is not *de minimis* simply because it does not require extensive medical treatment.  As the Supreme Court has explained, the "core judicial inquiry" in evaluating a claim for excessive force is not "whether a certain quantum of injury was sustained, but rather 'whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (quoting *Husdon v. McMillian*, 203 U.S. 1, 7 (1992.)) There is no suggestion in this case that the alleged use of force was carried out in a good-faith effort to maintain or restore order. Rather, the Defendants position is that it never happened and not that the officers were required to use force for a particular purpose. Thus, a jury could reasonably find that a use of force as alleged by Plaintiff constitutes excessive force in violation of the Constitution.

Further, while there is no Eleventh Circuit case, which has expressly addressed the issue of whether a broken rib standing alone constitutes a *de minimus* injury, the Eleventh Circuit has affirmed the denial of summary judgements in excessive force cases where one of the injuries involved broken ribs. *See Skrtich v. Thornton et al.*, 280 F.3d 1295 (11th Cir. 2002) (affirming denial of defendants' summary judgment motion in Eighth Amendment excessive force case where inmate suffered multiple fractures to the left ribs, back injury with fractured multiple transverse processes, right scalp laceration, left shoulder and right knee injury abdominal trauma, and post trauma anemia); *King v. Reap*, 269 Fed..Appx. 857 (11th Cir. 2008) (affirming denial of

defendants' summary judgment motion in Fourth Amendment excessive force case where arrestee suffered two broken ribs, soft tissue damage, bruising of his cheeks and face, and various scratches.)

Accordingly, for the reasons discussed above, the Court concludes that there is a genuine dispute of material fact as to whether the beating occurred, as alleged by Plaintiff.  Certainly, if a jury was to believe Plaintiff's version of the events, a jury could find that Defendants' actions constituted excessive force.  Therefore, Defendants' motion for summary judgment is due to be denied.

## B.  Qualified Immunity

Defendants also argue that they are entitled to summary judgment because there actions are subject to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Andujar v. Rodriguez,* 486 F.3d 1199,1202 (11th Cir. 2007) (citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472-73 (1985). There are two prongs to a qualified immunity test.  The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004).  The U.S. Supreme Court has held that lower courts are permitted to exercise discretion in deciding which prong of the test to address first. *Pearson v. Callahan, 555* U.S. 223, 236 (2009.)

When a reasonable officer knows that the excessive force is clearly in violation

of constitutional rights and the duty to intervene is clearly established, qualified

immunity is unavailable.  *Priester v. City of Riviera Beach, Fla.* 208 F.3d 919, 927-28

(11th Cir. 2000).  There is little question, that a gratuitous beating of the type alleged by

Plaintiff would certainly run afoul of the Eighth Amendment and, thus, Defendants

concede that "to the extent the violent and horrific assault Plaintiff alleges survives

summary judgment ...  qualified immunity would not attach to such an event."  (Doc. 90

at 21.)  Having determined that Plaintiff has sufficiently alleged a claim for excessive

force that, if true, would violate Plaintiff's Eighth Amendment rights, the Court concludes

that Defendants' motion for summary judgment on the grounds of qualified immunity

also should be denied.  *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002.)

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' Motion for Summary Judgment (Doc. 90) should be **DENIED** and
this cause should be remanded to the undersigned for further proceedings.

**IN CHAMBERS**, at Gainesville, Florida, this 5th day of February 2014.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to
the proposed findings and recommendations within 14 days after being served
with a copy of this report and recommendation.  A party may respond to another
party's objections within 14 days after being served with a copy thereof.  Failure
to file specific objections limits the scope of review of proposed factual findings
and recommendations.**